NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**SNAP INC.,**
*Appellant*

**v.**

**YOU MAP, INC.,**
*Appellee*

_____

2024-1120

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2022-00568.

_____

Decided:  October 1, 2025

_____

NATHAN R. SPEED, Wolf, Greenfield & Sacks, P.C., Boston, MA, argued for appellant.  Also represented by ELISABETH H. HUNT, STUART DUNCAN SMITH.

RICHARD A. CATALINA, JR., Jardim, Meisner, Salmon, Sprague & Susser, PC, Florham Park, NJ, argued for appellee.  Also represented by RYAN NORTH MILLER, Fox Rothschild LLP, Philadelphia, PA.

_____

Before DYK, HUGHES, and STARK, *Circuit Judges*.

DYK, *Circuit Judge*.

Snap Inc. ("Snap") appeals from a Patent Trial and Appeal Board ("Board") final written decision allowing substitute claims for U.S. Patent No. 10,616,727 (the "'727 patent"), which is owned by Appellee You Map, Inc. ("You Map"). We affirm the Board's decision that the substitute claims satisfy the written description requirement of 35 U.S.C. § 112. However, we conclude that the Board erred in its determination that Snap failed to show that the substitute claims were not obvious over prior art reference Feldman.[1] Whether the substitute claims are obvious turns on the substitute claims' requirement that the claimed request for social media posts include a "current zoom level." We see no error in the Board's determination that Feldman does not disclose a request that includes a "current zoom level." However, the Board's determination that it would not have been obvious to modify Feldman to include a "current zoom level" in the request is inconsistent with *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398, 401 (2007). We *affirm in part*, *vacate in part*, and *remand* for further proceedings.

BACKGROUND

Social media platforms that allow users to share posts—including text posts, photos, and videos—with other users on the internet were widespread and well known before the priority date of the '727 patent. Users often want to know the location associated with an individual post on social media or the location of a venue referenced in a social media post.

---

[1] U.S. Patent Application Publication No. 2015/0334077 ("Feldman") (filed May 18, 2015; published Nov. 19, 2015).

If every post ever made on a social media application were to be displayed simultaneously on a map, however, "hundreds or thousands of posts would overcrowd [the] display making the map, and therefore the posts, virtually useless." '727 patent, col. 3 ll. 47–51. You Map's '727 patent describes a system directed toward solving this problem by "provid[ing] an overview of the most important human activity in a country, region, city, or other level" on a digital map display. *Id.* col. 10 ll. 65–67. The original claims of the '727 patent claimed a system that "receive[s] . . . a request . . . includ[ing] screen attribute information about a display of a client device" and "identify[s] a set of temporally recent social media posts based on the screen attribute information . . . ." '727 patent, claim 1; *accord id.* claims 11, 20. The '727 patent describes various embodiments to filter the selection of social media posts shown to the user (or "client"). *See id.* col. 3 l. 52–col. 4 l. 3. In one embodiment, the client sends a request to the system to display social media posts, and that request includes a "current zoom level" of the client device. *Id.* col. 1 l. 65–col. 2 l. 2; *id.* col. 7 ll. 3–20. "[W]hen a user has zoomed out, they may see posts that have a high importance level (also referred to herein interchangeably with a value or a score), and when they zoom in on an area, a system may show a user posts with lower importance values." *Id.* col. 3 ll. 58–63. The "current zoom level" may be used to display a limited amount of map on the client's device. *Id.* col. 7 ll. 8–20.

The claims of the '727 patent include a "combined ranking" step that is used to determine what group of posts are provided for display on the client's device. *E.g.*, '727 patent, claim 1. The combined ranking of the social media posts is created through a "first customized score . . . based on a first set of preference factors" and "a second customized score . . . based on a second set of preference factors." *Id.*

Snap petitioned for inter partes review ("IPR") of all claims of the '727 patent, arguing that the claims were obvious. The Board instituted IPR and determined that claims 1–20 of the '727 patent were unpatentable as obvious. This determination is not challenged on appeal.

However, during the IPR proceedings, You Map filed a contingent motion to amend the '727 patent to include substitute claims 21–40 should claims 1–20 be determined to be unpatentable, and requested preliminary guidance on its substitute claims. You Map's substitute claims replaced "screen attribute information" with "current zoom level." The following portion of substitute claim 21 is representative of the "current zoom level" amendments:

A system for providing location information on a social network, comprising:

[21.1] a computer processor; and

[21.2] a social mapping module executing on the computer processor and configured to enable the computer processor to:

[21.3] receive, from a client device, a request for one or more social media posts, wherein the request includes [~~screen attribution information about~~] a current zoom level of a display of the client device, geographic location information, and an identification of a requesting account of the social network;

[21.4] identify a set of temporally recent social media posts based on the [~~screen attribute information~~] current zoom level of the display of the client device and the geographic location information; . . . .

J.A. 1693 (alterations in original).

In its final written decision, the Board determined substitute claims 21–23, 25, 27–33, 35, and 37–40 were not obvious because of You Map's added "current zoom level" limitation.[2]  In reaching this conclusion, the Board rejected Snap's argument that the "current zoom level" limitation would have been obvious.  First, the Board found that Feldman disclosed sending a request that contained a "radius," but did not disclose sending a request containing a "current zoom level," and that "radius" and the zoom level described in Feldman were two different concepts.  J.A. 51–53.  Second, the Board found an ordinarily skilled artisan would not have been motivated to combine Feldman's request with the inclusion of a "current zoom level" parameter, and thus that Snap had not shown that the substitute claims would have been obvious.  In addition, the Board determined the '727 patent provided adequate written description support for the "combined ranking" step, which was present in both the original and substitute claims.

Snap timely appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

### I

### A

We first consider the Board's obviousness determination.  Because obviousness is a mixed question of law and fact, the Board's legal conclusion of obviousness is reviewed de novo and its factual findings related to obviousness are reviewed for substantial evidence.  *Apple Inc. v. Gesture Tech. Partners, LLC*, 127 F.4th 364, 368 (Fed. Cir. 2025).  Snap argues that the Board erred in finding that Feldman

---

[2] You Map voluntarily withdrew substitute claims 24, 26, 34, and 36 before the Board issued its final written decision.

does not disclose a "request includ[ing] a current zoom level" as required by the substitute claims. Although the Board found that Feldman discloses a zoom level, the Board found that Feldman's *request* for social media posts contained only "the radius . . . , not the current zoom level[.]" J.A. 53. This finding is supported by substantial evidence. While Feldman refers to adjusting the zoom level of the client device, it says nothing about including a zoom level in the request.

Snap appears to contend, however, that the "current zoom level" and the "radius" are the same thing. Appellant's Br. 31.[3] As discussed below, the record establishes that the two can achieve the same result—defining the search perimeter—but they achieve this result in different ways. Feldman's "radius" is a definition of the "perimeter," which may be used to "designate geosearch location" in a search request for social media posts," J.A. 902 ¶¶ 68, 71. Feldman's zoom level can be used to set a perimeter. J.A. 52–53. While the zoom level and "radius" can achieve the same result—establishing a perimeter—they achieve this result through two different mechanisms. The Board's conclusion that Feldman does not disclose sending a "current zoom level" in a request for social media posts to a system is thus supported by substantial evidence.

---

[3]    Snap also argues the Board erred in implicitly construing the term "current zoom level" by requiring the "'current zoom level' be included in a request using a particular explicit data format." Appellant's Br. 24, 31–36. This is incorrect. The Board required Snap to show the "current zoom level" was included in a search request, and determined this parameter simply was not in Feldman's request.

B

The Board next determined that adding the "current zoom level" to Feldman's request would not have been obvious. Snap argued throughout its motion to amend briefing that "[i]ncluding the zoom level would have been an obvious, predictable design choice to implement Feldman's goal of 'modify[ing] what is searched at the same time the area the user desires to view is selected dynamically,'" J.A. 2054 (citing J.A. 903) (alterations in original), and that "it would have been obvious to *modify* Feldman to tie the search area to the zoom level," J.A. 2628 (emphasis in original). Snap's expert also explained that "the modification requires only simple, well-understood programming to include [the 'current zoom level'] in the request," how an ordinarily skilled artisan had "strong incentive to include 'current zoom level' in [Feldman's] request," and why an ordinarily skilled artisan "would have expected success" with this inclusion. J.A. 2373 ¶ 88. The Board agreed with Snap that prior art references "explain that it was known to specify the zoom level" in a search request. J.A. 58; *see also* J.A. 55–56 (explaining that Snap "provide[d] seven additional references with teachings related to zoom level").

Although You Map was entitled to submit a reply to Snap's opposition to the motion to amend under the Board's motion to amend pilot program procedures,[4] You Map did not do so. Thus, You Map did not offer evidence to rebut Snap's expert's testimony explaining why adapting Feldman's request to include the "current zoom level" "would

---

[4]    Notice Regarding a New Pilot Program Concerning Motion to Amend Practice and Procedures in Trial Proceedings Under the America Invents Act Before the Patent Trial and Appeal Board, 84 Fed. Reg. 9497, 9500–01 (Mar. 15, 2019) (stating that a patent owner may file a reply to petitioner's opposition to motion to amend and "may file new evidence, including declarations, with its reply").

have been an obvious and predictable design choice." J.A. 2373 ¶ 88.

Both You Map and the Board read Snap's opposition to You Map's motion to amend as arguing both that it was obvious either to add the "current zoom level" to Feldman's request or to replace the "radius" in the request with the "current zoom level." You Map argues that "Snap was obligated to explain why one of ordinary skill in the art would replace the perimeter 303 in Feldman's request with a 'current zoom level' or add a 'current zoom level' to Feldman's request that already includes perimeter 303." Appellee's Br. 3. Likewise, the Board noted that Snap's failure was in "not explaining how adding information to [Feldman's] request or possibly replacing the perimeter 303 . . . would further [the] goal" of "modify[ing] what is what is searched at the same time the area the user desires to view is selected." J.A. 57; *see also* J.A. 54.

The Board rejected the first theory (adding the "current zoom level") on the ground that "Feldman's goal of 'modify[ing] what is searched at the same time the area the user desires to view is selected dynamically,'" J.A. 57 (quoting J.A. 2054), is "already achieve[d]" by sending Feldman's perimeter 303 (*i.e.*, how to define the search perimeter) in the request, *id.* As to the second theory (replacing the "radius"), the Board inconsistently concluded that the theory failed because Snap did not "explain how Feldman would obtain the search radius if only the zoom level were sent in the request," i.e., Snap did not explain how the search perimeter would be achieved in Feldman using only the zoom level. J.A. 57.

The Board's rejection of the second theory is not supported by substantial evidence. The Board elsewhere found based on undisputed evidence that search requests including a zoom level or a radius can accomplish the same result. The Board determined that "Feldman does not need to send the zoom level in the request because the search

request already contains search perimeter" and that "zoom level, in some cases, is already accounted for in the radius specified by search perimeter." J.A. 55. You Map likewise conceded that Feldman disclosed using the zoom level as "a means of *setting* a radius." J.A. 2649 (emphasis in original). On appeal, You Map contended that the Board, citing Snap's petition, "noted that both parties' experts agree that adjusting a 'zoom perspective' in Feldman's system was one such way of establishing the search perimeter." Appellee's Br. 33 (citing J.A. 52–53, then citing J.A. 2624).

In other words, the '727 patent's use of a "current zoom level" and Feldman's use of a "radius" are merely different approaches used to achieve the same result—designating a search perimeter to select a portion of a map for display, search, or posting. They also address the same problem of "overcrowd[ing]" on social media maps which, absent these solutions, would render the maps "virtually useless." '727 patent, col. 3 ll. 47–51.

Snap relied on the prior art and expert testimony to explain how "[i]ncluding the zoom level would have been an obvious, predictable design choice to implement Feldman's goal of 'modify[ing] what is searched at the same time the area the user desires to view is selected dynamically.'" J.A. 2054 (quoting J.A. 903 ¶ 88) (citing J.A. 2373 ¶ 88 (declaration of Snap's expert), then citing *KSR*, 550 U.S. at 417).

In this respect, Snap in its opposition to You Map's motion to amend relied on *KSR* to explain how predictable design choices were obvious. *KSR* held that a "simple substitution of one known element for another or the mere application of a known technique to a piece of prior art ready for the improvement" almost certainly renders a patent obvious. *KSR*, 550 U.S. at 417. "If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability." *Id.* "This is the so-called 'known-technique' rationale. . . . [I]f there's a known

technique to address a known problem using 'prior art elements according to their established functions," then there is motivation to combine." *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1380 (Fed. Cir. 2023). Such is the case here.

This is therefore not a situation in which there was a lack of evidence of motivation to combine teachings known in the art. *Cf. Virtek Vision Int'l, ULC v. Assembly Guidance Sys., Inc.*, 97 F.4th 882, 886–88 (Fed. Cir. 2024) (reversing Board's obviousness determination when no evidence gave a "reason for combining" two teachings known in the prior art, as "[i]t does not suffice to simply be known"). Under *KSR* and our cases, a challenger need not show that the substitution would be an improvement over the original invention. Instead, the challenger need only show that one element was a known substitute for the other. *See Intel Corp.*, 61 F.4th at 1380 ("That [two teachings in the prior art] address the same problem and that [each of them] was a known way to address that problem is precisely the reason that there's a motivation to combine under *KSR* and our precedent."); *PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1197–98 (Fed. Cir. 2014) ("Our precedent . . . does not require that the motivation be the *best* option, only that it be a *suitable* option from which the prior art did not teach away."); *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 799–801 (Fed. Cir. 2021) (similar).

As its analysis rested on a flawed understanding of *KSR*, we vacate the Board's finding that there is no motivation to modify Feldman's request to include a "current zoom level" based on any of Snap's seven prior art references teaching requests relating to zoom levels. Under the correct legal standard, the undisputed evidence established a motivation to modify the radius in Feldman's search request to instead be based on the zoom level parameter disclosed in the prior art. On remand, the Board's

consideration of obviousness must be consistent with this conclusion.

## II

Finally, we conclude that substantial evidence supports the Board's finding that the written description requirement of 35 U.S.C. § 112 was satisfied for the claimed "combined ranking" step. Snap argues You Map did not provide the Board with adequate evidence to determine whether the '727 patent's specification discloses the "combined ranking" step. In its motion to amend, You Map demonstrated that the '727 patent provided an adequate written description of the "combined ranking" step by citing portions of the specification. Snap argues these citations failed to satisfy the requirements of 37 CFR § 42.22(a)(2), which requires motions before the Board to include "a detailed explanation of the significance of the evidence including material facts . . . ."

"Decisions related to compliance with the Board's procedures are reviewed for an abuse of discretion." *Ericsson Inc. v. Intell. Ventures I LLC*, 901 F.3d 1374, 1379 (Fed. Cir. 2018). Here, the Board considered You Map's citations to the '727 patent specification, found the meaning of these citations "apparent," and determined that the citations were "sufficient to understand how the original claim limitations are supported." J.A. 48–50.

Snap cites to *Parus Holdings, Inc. v. Google LLC*, 70 F.4th 1365 (Fed. Cir. 2023), for the principle that a party bearing the burden of production must provide some combination of relevant record evidence and explain the significance. *Parus*, however, arose in the context of a party asserting an earlier priority date for its claims and then incorporating by reference 1,300 pages of exhibits and forty claim charts—without a brief—to support the claimed priority date. *Id.* at 1369. The concerns in *Parus* are not present here. To demonstrate the disputed "combined

ranking step" had written description support, You Map provided string citations to the specification of the '727 patent, which is the "single best guide to the meaning of a disputed term." *Philips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The Board found the meaning of the specification "apparent," and thus the Board's conclusion that the citations were clear was within its discretion. J.A. 49–50.

Snap also contends, however, that the passages included in the citations did not support the Board's conclusion. The Board found that the patent disclosed "examples where the user creates multiple maps that each have their own ranking of post by relevancy," J.A. 49, and "that the system creates more than one customized score when the posts are ranked for different maps," J.A. 50. In a specific example from the cited passages, the Board recognized that "the system weighs the impact of each social-emotive data score, incorporating a person's emotional state and geographic location, and combines them together to get an overall score for a map." J.A. 50 (citing J.A. 1673). These evidentiary findings, which support the conclusion that the "combined ranking" step is disclosed in the '727 patent, are supported by substantial evidence.

### CONCLUSION

We determine that the Board properly rejected Snap's written description and single-reference obviousness challenges but that the Board erred in its analysis of the motivation to modify Feldman's request to include a "current zoom level." Therefore, we *affirm in part*, *vacate in part*, and *remand* to the Board for further proceedings consistent with this opinion.

## AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

SNAP INC. v. YOU MAP, INC.                                     13

COSTS

Costs to Snap.